### 1773. GEORGIA RAILROAD & BANKING CO. *v.* GREER.

### 1774. GEORGIA RAILROAD & BANKING CO. *v.* NASH.

### 1775. GEORGIA RAILROAD & BANKING CO. *v.* NASH.

1. The correctness of the brief of the evidence may be shown by recitals in the bill of exceptions.

2. When the railroad commission has ordered that a certain point on the line of a railroad company shall be made a station for the reception and discharge of passengers, it is a tort for the company, through its authorized agents, to refuse to contract with prospective passengers for carriage to that point, whether the refusal be in bad faith or merely negligent; and damages, general or special, may be recovered therefor.

3. If, in a case like that mentioned in the preceding headnote, the refusal to contract for carriage to the point designated by the railroad commission is wilful and intentional, or is otherwise accompanied by actual bad faith on the railroad company's part, the actual damages sustained may be enhanced by the addition of punitive damages and attorney's fees. However, if, by mere inadvertence or other neglect not accompanied by bad faith, the managing officers of the company fail to promulgate to the station agents and conductors the necessary instructions in order to put the railroad commission's rule in force, and these

minor employees, in obedience to previous instructions, refuse to accept passengers for carriage to the point in question, such a refusal stands upon a different footing.

4. The maxim volenti non fit injuria is applicable to a case like that mentioned above, where the prospective passengers, after they had been told by the station agent that the train on which they desired passage would not stop at the point to which they wished to go, and that he could not sell them tickets to that point, nevertheless boarded the train and were damaged by reason of the fact that the train did not stop at the point desired by them. Legally speaking, they consented to all the damage that accrued to them after they boarded the train and by reason of its not stopping when they desired.

Actions for damages; from city court of Covington—Judge Whaley. February 13, 1909.

Argued May 6, 1909.—Decided January 21, 1910.

*Joseph B. & Bryan Cumming, J. M. Pace,* for plaintiff in error. *Middlebrook, Rogers & Knox,* contra.

POWELL, J. The three defendants in error brought their separate actions against the Georgia Railroad and Banking Company. The cases were tried together by special agreement and consent upon the same state of facts, though separate verdicts were rendered and separate writs of error were sued out. Plaintiffs' petitions originally set up that on July 8, 1908, the railroad commission of this State ordered that as to train No. 28 of the Georgia Railroad, Alcovy, situated about half way between Social Circle and Covington, should be made a flag station, and that this train should be stopped there on signal or request to take on or to let off passengers, on and after July 15, 1908. It was admitted that this order was mailed to the railroad company and received by it shortly before the 15th of July—sometime between the 8th and 12th. For some reason (not appearing in the evidence,—for the judge excluded the defendant's evidence tending to show that it was the result of an oversight in the office by which the stenographer entrusted with the mailing of the notices failed to get them off) the instructions necessary to put this change of schedule into effect was not transmitted to the agent at Covington nor to the conductor in charge of train No. 28. In the original petitions it was set up that on the 15th of July, 1908, these plaintiffs, who lived at Alcovy, came to Covington on the morning train, with a view of returning on No. 28, which passed from Covington to Alcovy in the afternoon; that they applied to the agent at Covington to sell them a

ticket to Alcovy, but he told them that no order had been issued for train No. 28 to stop there and that it would not stop there, and, therefore, he would not sell them a ticket to that point; that afterward, when train No. 28 arrived at Covington, they got aboard it and tendered the conductor the payment of their fare to Alcovy and he refused to take it, but demanded of them fare at the conductor's rate, which is one cent a mile higher than the agent's rate, to Social Circle, which they paid; that the train went by Alcovy without stopping; that the conductor refused to stop it there and did not stop until it arrived at Social Circle, where they alighted, some six miles from their home, much to their inconvenience and damage; that the railroad company's refusal to stop at Alcovy was wilful and malicious, and subjected the company to punitive damages and also to attorney's fees. By amendment, so much of the petitions as stated that the plaintiffs had first applied to the agent at Covington and had been refused a ticket, and had been told that the train would not stop at Alcovy, was stricken by the plaintiffs. The actual damages proved by the plaintiffs were slight. The jury returned a verdict in each case for $150 damages, and $50 additional as attorney's fees. Without setting forth with particularity the different exceptions presented in the record, we shall attempt to lay down certain general principles which should control the next trial. As to these exceptions, we may say, however, that some of them are bad in substance and some bad in form, but enough of them are well taken and are in proper form to require a reversal of the judgment. We do not think that the demurrers were well taken, considering the final shape in which the plaintiffs' pleadings were left; so we will discuss the transaction on its merits as presented by its different phases. Further facts necessary to an understanding of the errors complained of will be stated in the course of the opinion.

1. The defendant in error insists that the court can not consider any error dependent on a consideration of the testimony, because the brief of the evidence has not been approved by the trial judge. In the record there is what purports to be the brief of the evidence. It was filed in the office of the clerk of the superior court before the judge passed on the motion. It bears the agreement of counsel as to its correctness; but this alone is not sufficient. There is no formal order of the judge attached to it and approving it. If it

were not otherwise verified as correct, the point made by counsel for defendant in error, would be well taken. This much is so well settled by this court and by the Supreme Court as to require no citation of authority. However, upon examination of the bill of exceptions we find the statement: "at said trial the evidence now embraced in a brief of the evidence filed with the motion for new trial was submitted to the jury," and this brief of evidence is specified as part of the record. Since it affirmatively appears that this brief of the evidence was before the court at the time the motion was heard and that it contained the evidence that was submitted to the jury (and this is all the brief of the evidence should contain), the point is not well taken. It has been held frequently that the approval of the brief of the evidence need not appear in the record, provided that it appears from the bill of exceptions. *Milton* v. *Savannah,* 121 *Ga.* 89 (48 S. E. 684) ; *Baird* v. *Bate,* 114 *Ga.* 117 (39 S. E. 943).

2. When the railroad commission ordered, that, as to train No. 28, Alcovy should be a flag station, and that upon signal or request that train should stop there to take on or let off passengers, it gave the matter the same status which it would have had if Alcovy had been a flag station established by the order of the company and held out by it to the public as such. The order of the railroad commission had no greater efficacy than this. It became the duty of the company to contract with all prospective passengers for carriage upon its train No. 28 from other stations upon its line to Alcovy, and from Alcovy to other stations upon its line, as to train No. 28. To refuse to make such a contract was a breach of the company's legal duty, and a tort. It was such a tort that general damages would flow from it. So, too, it was such a tort as to authorize the plaintiffs to recover all special damages which proximately flowed from it.

3. Whether the company's refusal to accept passengers on its train No. 28 to Alcovy gave rise also to an action for punitive damages depends upon whether the company's refusal was in bad faith, was intentionally oppressive, was malicious, or was tainted with any of those elements from which the law is accustomed to allow juries to assess a sum in order to deter the wrong-doer from a repetition of the wrong. Whether such a state of facts exists or not is to be determined by the actual intention and conduct, and by the actual

motives of the defendant company, in the light of all the facts and circumstances of the case. Just here we may say that the refusal of the station agent to sell a ticket to Alcovy, and the refusal of the conductor to accept the plaintiffs as passengers to that point, are to be regarded as wilful and intentional, within the purview of the principle stated above, only in the event that the company had intentionally failed to obey the rule of the commission by refusing to transmit the necessary orders to these employees, provided that the employees themselves were simply obeying the rules of the company in refusing to make the contract of carriage in behalf of the company. In other words, the special order of the railroad commission was not such a law that the conductors and agents should have attempted to run the trains of the company in accordance with it, in violation of the instructions given them by the superior employees of the railroad company. The agent's refusal to sell the tickets, the conductor's refusal to accept the passage money to Alcovy, would be an intentional tort on the company's part only in the event that the company's refusal to obey the order of the railroad commission was intentional, and not merely negligent. Of course, if the company had issued the order and had transmitted it to the agents and conductors, and they had then wilfully or intentionally refused to obey the order, or had wantonly declined to recognize Alcovy as a flag station, it would have been such a tort on the company's part as to submit it to the imposing of punitive damages, at the discretion of the jury; but this is a different tort, and not the one involved in the present case. The case, under the facts as in all likelihood they existed (or at least as they would have appeared to have existed if the testimony excluded by the court had been admitted), as to the question of punitive damages and the recovery of attorney's fees, hinged upon the motives influencing the failure of the officials of the company to promulgate the orders necessary to put into effect the order of the railroad commission.

We do not see that it makes any difference that these prospective passengers informed the conductor and the agent, generally or specifically, that the railroad commission had passed an order requiring the Georgia Railroad to make Alcovy a flag station on that date. While it is the duty of the railroad employees to refuse to obey an order of their superiors where it would involve them criminally, and it is their duty to obey the law of the land, where that

law conflicts with the special orders of the company, yet a mere special order of the railroad commission of the kind in question is not to be given such an effect; because, while the general orders of the railroad commission are matters of public cognizance, the special orders are not so, and are not intended to be enforced by direct communication to the employees, but through orders issued by the proper officials of the company to the employees. It is highly important to public safety that conductors and others in charge of trains should obey the general and special orders of their superior implicitly in the operation of the trains. To stop a passenger train at a point where those who are controlling it from headquarters by telegraphic signals do not intend it to stop is always a matter fraught with danger to the service.

4. The plaintiffs originally alleged that before they got upon the train they applied to the station agent for tickets to Alcovy, and he refused to sell them and told them that the train would not stop at that point. As stated above, this particular paragraph was stricken from the petition, but on the trial the defense offered it as evidence, and the court ruled it out. The court rejected the agent's offer to testify as a witness to the same state of facts, and to circumstances which would show his utmost good faith. We think that this testimony was relevant and bore directly and controllingly upon the very gist of the transaction. As we have said above, this refusal of the agent, though made in good faith and innocently, and though the company had been guilty of no wilful intention to violate the order, was a tort. It was the refusal of a common carrier to make a contract of carriage with a prospective passenger entitled to the passage; it was a breach of a plain legal duty, giving rise to a right of action. The station agent stood in such relation to the company that his refusal to comply with the legal duty was the company's refusal, and his act was sufficient to complete this tort which we are just now considering. By him the plaintiffs were informed of the company's attitude. By him, who had the power to give such information, the plaintiffs were informed that they would not be accepted for carriage on the train from Covington to Alcovy. Through this conversation the plaintiffs were put on notice that if they got upon the train they would not be accepted as passengers to Alcovy; and therefore, if the refusal to let them off at Alcovy would specially damage them, that those damages would

ensue if they attempted to go on that train. Nevertheless the plaintiffs, being fully informed as to the company's attitude, got upon the train, and the very consequence necessarily to be expected did in fact ensue. If they had talked to the conductor in the meantime and he had given them any assurance that the agent had not spoken the company's attitude truly, or had given them any reason to believe that he would assume any other attitude, the case might be different; but they got upon the train despite the definite announcement of the company that the train would not stop at Alcovy, and subjected themselves to the hurt of being carried on to Social Circle. As to such damages as ensued to them after they got upon the train, if this is not a case for the application of the maxim volenti non fit injuria, we do not believe we ever saw one. Volenti non fit injuria is a principle separate and distinct from the doctrine of contributory negligence. Even where the defendant's act is such, by reason of its wantonness or otherwise, as to cut off the defense of contributory negligence, the plaintiff can not recover, if it appears that he consented to the injury. Civil Code, §§2322, 3893. Where a person sees and knows that a definite wrongful act is about to ensue, but that it will not ensue unless he puts himself in range of it, and then consciously, knowingly, and voluntarily puts himself within range of it, the law says that he consents to it. The fact that he was protesting against the wrong's taking place does not make him any the less consenting to the damage, in the legal sense, where he could have avoided the damage and, on the contrary, intentionally exposed himself to it. As to the original wrong,—as to the refusal of the company to discharge its duty as a common carrier (the refusal was complete before the plaintiffs ever boarded the train), the plaintiffs may recover for that; but as to the damages they voluntarily courted after that time, it would be contrary to every principle of law, or even of abstract justice, to allow them to maintain an action.

We do not think that the question is properly made in the record, but, as the case is to be tried again, we may say that the court should have allowed the testimony offered by the defendant to show that the failure to transmit the orders to the station agents and conductors in time to put the railroad commission's order into effect on the date named was the result of the mere inadvertence or negligence of one of the minor employees in the main office of the

company, and that it was not accompanied by any conscious, wilful intent to violate the order.

If the testimony which was excluded had been admitted, the facts shown would not authorize the recovery of punitive damages or attorney's fees. The plaintiffs ought to be reimbursed in some sum for the loss and discomforture occurring to them from the company's failure to observe the order of the railroad commission, but this sum should not be assessed on the basis of punitive damages.　　　　*Judgment reversed.　Russell, J., concurs specially.*